UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)

**RECEIVED**

AUG – 7 2009

**JAMES BONINI, CLERK**
**COLUMBUS, OHIO**

| | | |
|---|---|---|
| PLAINTIFFS UNDER SEAL | ) | Civil Action No. **2 : 0 9** ᶜv **6 9 8** |
| | ) | |
| v. | ) | **FILED UNDER SEAL** |
| | ) | **JURY TRIAL DEMANDED** |
| DEFENDANTS UNDER SEAL | ) | |

**JUDGE MARBLEY**

**MAGISTRATE JUDGE KEMP**

## COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. §3729, *et seq.*

B. DAHLENBURG BONAR, P.S.C.

*[signature]*

BARBARA D. BONAR (43797)
THERESA M. MOHAN (72307)
3611 Decoursey Avenue
Covington, Kentucky 41015
(859) 431-3333
**Attorneys for Plaintiff/Relator**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION (COLUMBUS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Civil Action No. |
| ex rel. ROBERT A. LITER, | ) | |
| and on behalf of the STATES of | ) | |
| ARKANSAS, CALIFORNIA, | ) | |
| CONNECTICUT, DELARARE | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| FLORIDA, HAWAII, INDIANA, | ) | |
| ILLINOIS, IOWA, KANSAS, | ) | |
| LOUISIANA, MAINE, | ) | |
| MASSACHUSETTS, MICHIGAN, | ) | |
| MINNESOTA, MONTANA, | ) | |
| NEW HAMPSHIRE, NEW MEXICO, | ) | **FILED UNDER SEAL** |
| NEW YORK, NEVADA, OHIO, | ) | |
| TENNESSEE, TEXAS, and VIRGINIA | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABBOTT LABORATORIES | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS
## 31 U.S.C. §3729, *et seq.*

### I. INTRODUCTION

1. This is an action, brought by the Relator, to recover damages and civil penalties on

behalf of the United States of America, and state and local governments arising out of

false claims and records presented by Defendant to the United States and the various

states, including the following: Arkansas, California, Connecticut, Delaware, District

of Columbia, Florida, Hawaii, Indiana, Illinois, Iowa, Kansas, Louisiana, Maine,

Massachusetts, Michigan, Minnesota, Montana, New Hampshire, New Mexico, New York, Nevada, Tennessee, Texas, and Virginia ( "*Qui Tam* States").

2.  This action arises under the provisions of Title 31 U.S.C. 3729, et seq., popularly known as the False Claims Act, and pursuant to analogous provisions of state law, including, but not limited to the following:    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, et seq. and Arkansas Unfair Practices Act, Ark. Coe. Ann. §4-75-301, et seq. Arkansas Medicaid Fraud False Claims Act, §20-77-901 et seq.; the California Cartwright Act, Cal. Bus. & Prof. Code §16700 et seq. and Unfair Competition Act, Cal. Bus. & Prof. Code  § 17200 et seq., California False Claims Act,  Cal. Code  § 12650 et seq.; the Connecticut Antitrust Act, Conn. Gen. Stat. 35-24 et seq., and Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a et seq.; the Delaware False Claims and Reporting Act De. Code Ann. Tit. 6, §1201 et seq.; the District of Columbia Antitrust Act, D.C. Code  § 28-4502, District of Columbia False Claims Act. D.C. Code  § 2-308.13 et seq.; Florida's Deceptive and Unfair Trade Practices Act §501.207 et seq., Florida False Claims Act, Fla. Stat. 68-081 et seq.; the Hawaii False Claims Act – False Claims to the State Haw. Rev. Stat.  § 661-21 et seq.; the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1 et seq.; the Indiana False Claims and Whistleblower protection Act Ind. Code §5-11-5.5 et seq.; the Iowa Consumer Fraud Act, Iowa Code section 714.16 et seq., and Iowa Competition Act Iowa Code section 553 et seq.; the Kansas Restraint of Trade Act, Kan. Stat. Ann. §50-101 et seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. § 46:437.1 et seq.; the Maine Monopolies and Profiteering Law, 10 MRSA §1101 et seq.; the Massachusetts False Claims Act, Mass

Laws Ch. 12, §5A et seq.; the Michigan Medicaid False Claims Act, Mich Comp

Laws serv. §400.601 et seq.; the Minnesota Unlawful Trade Practices Act Minn. Stat.

§325D.09 et seq.; the Montana False Claims Act, Mont. Code  §17-8-401 et seq.; the

New Hampshire Medicaid False Claims Act, N.H. Rev. Stat. § 167:61-b et seq.; the

New Mexico Medicaid False Claims Act., N.M. Stat  § 27-14-1 et seq.; the New York

False Claims Act, N.Y. CLS St. Fin. § 187 et seq.; the Nevada False Claims to State

or Local Government Act, Nev. Rev. Stat. § 357.010 et seq.; the Ohio Medicaid

Fraud, ORC  § 5111.03 et seq.; the Tennessee False claim act 4-18-103(a)(1) et seq.,

Tennessee Medicaid False Claims Act, 71-5-181 et seq.; the Texas Medicaid Fraud

Prevention, Tex. Hum. Res. Code  §36.001 et seq.; and the Virginia Fraud Against

Taxpayers Act, Va. Code  § 8.01-216.1 et seq. (Collectively, "State *qui tam* statutes").

3.  The False Claims Act was intended by Congress to create incentives for individuals
aware of fraud against the Government to disclose information without fear of
reprisals or Government inaction.

4.  The State *qui tam* statutes were intended by the respective state's legislature to
protect its citizens from illegal practices and procedures.  Most State *qui tam* statutes
provide for civil recovery against a defendant who violates the qui tam statutes.

5.  The False Claims Act allows any person having knowledge of a fraud or fraudulent
claim against the Government to share in any recovery.

6.  Relator has direct and independent personal knowledge of the Defendant's practices
as a result of an extensive independent investigation he personally conducted.
Relator brings this action for violations of the False Claims Act on behalf of himself

and the United States of America, and for violations of state false claims actions on behalf of himself and the *Qui Tam* States.

7. As required by the False Claims Act, Relator has provided to the Attorney General of the United States, through the United States Attorney of Ohio, simultaneously with the filing of this Complaint, a Disclosure Statement of all material evidence and information related to the Complaint. This Disclosure Statement is supported by documentary evidence establishing the existence of false or fraudulent claims presented by or caused to be presented by Defendant to the United States Government, and/or the States, for payment. It is labeled "Disclosure Statement".

## II. **THE PARTIES**

### A. **Relator**

8. Plaintiff and Relator, Robert Liter, (hereinafter "Relator" or "Liter") is a resident of Ohio and is a current employee of Abbott Laboratories (hereinafter "Abbott" or "Defendant") as a professional cardiovascular sales representative. Relator was originally hired as an employee of KOS Pharmaceuticals in November, 2006. When Abbott purchased KOS Pharmaceuticals, Relator became an employee of Abbott's.

9. Relator has a B.A. Degree from Hanover College, and has previously received an honorable discharge from the U.S. Army, where he served for six years.

10. Relator is the original source of the facts and information hereinafter set forth concerning the activities of Defendant Abbott. The facts averred herein are based entirely upon his personal observation and documents in his possession.

**B.  Defendant**

11. Defendant Abbott is a corporation organized, existing, and doing business under the laws of the State of Illinois.

12. Abbott's office and principle place of business is located at 100 Abbott Park Road, Abbott Park, Illinois.

13. Abbott is principally engaged in the manufacture and sale of pharmaceuticals, including prescription pharmaceuticals falling under the jurisdiction and regulation of the Food and Drug Administration (hereinafter "FDA"), throughout the United States.

## III. **JURISDICTION AND VENUE**

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732, which specifically bestow jurisdiction on this Court for actions brought pursuant to 3729 and 3730 of Title 31 of the United States Code.

15. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1345.

16. This Court has personal jurisdiction over Defendant Abbott, because, among other things, Abbott transacts business in this District, and Defendant Abbott engaged in wrongdoing in this District.

17. Venue is proper in this District pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1391(b)-(c).  Defendant Abbott transacts business within this District and because acts proscribed by 31 U.S.C. §3729 occurred in this District.

18. This suit is not based on prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation, in a Government

Accountability Office or Auditor General's report, hearing, audit, or investigation, from the news media, or in any other location as the term "publicly disclosed" is defined in 31 U.S.C. §3730. The Relator has, however, affirmatively disclosed the allegations herein to the Medicaid Fraud and Abuse Hotline, and to the Office of Inspector General.

19. To the extent that there has been a public disclosure of the information upon which the allegations of this Complaint are based that is unknown to Relator, Relator is an original source of this information as defined in 31 U.S.C. §3730. Relator possesses direct and independent knowledge of the information, which he acquired in the course of employment. Relator voluntarily provides the Government with this information.

20. The causes of action alleged herein are timely brought because, among other things, of efforts by Abbott to conceal from the United States, and the *Qui Tam* States, Defendant's wrongdoing in connection with the allegations made herein.

## IV. BACKGROUND/FACTUAL ALLEGATIONS

### *Cholesterol Medications: A Life-Long Treatment With A Shortened Profit Cycle.*

21. As will be more fully set out below and in Relator's Disclosure Statement, this is primarily a claim for damages under the False Claims Act, antitrust, and consumer protection acts, regarding Abbott's illegal promotion and sale of the prescription drugs Trilipix (Fenofibric Delayed Release Capsules), Certriad (a combination drug of Defendant's brand name drug Trilipix and AstraZeneca's statin drug, sold under the brand name Crestor), Niaspan (Niacin Extended Release Tablets), and Simcor (a combination of Niaspan and Simvastatin/Zocor).

22. Abbott additionally markets, or otherwise controls the pricing and/or sale of its prescription drug TriCor (Fenofibrate).

23. Abbott markets the drugs Trilipix, TriCor, Niaspan, Simcor, and soon to be released Certriad, for the treatment of Triglycerides, LDL-C [cholesterol], Total-C [cholesterol], and HDL-C [cholesterol].

24. Cholesterol problems, and high blood pressure, can lead to damage of the arterial walls, which contributes to cardiovascular disease and/or atherosclerosis. In many cases, patients die from these diseases.

25. Use of prescription drugs such as Trilipix, TriCor, Niaspan, Simcor, and soon to be released Certriad, are likely to be part of a life-long treatment program addressing cholesterol and blood pressure problems.

26. Abbott's drug TriCor (fenofibrate) will be available in a generic form within the next year. In 2008, TriCor revenue was $1,400,000,000. Within six months of the generic fenofibrate drug being on the market, Abbott anticipated a severe drop in revenue, and thus a loss of profits, from its sales of TriCor.

27. As more fully described in the Disclosure Statement, Defendant was seeking a greater share of the statin drug market. Defendant was, and is, seeking to gain a substantial foothold in the $12 billion market share the leading prescription drug, Lipitor, has as Lipitor should be available in generic form within the next 18 months.

28. Defendant, through its illegal marketing and sales of Trilipix sought not only to preserve its market on fenofibrates, it was, and is, using patient's switch toTrilipix to illegally promote and sell Defendant's other drugs, such as Simcor and the new Certriad.

29. Defendant knew, or should have known, that a large percentage of patients who use prescription medication for cholesterol (such as TriCor) are on a government plan such as Medicaid or Medicare, or are members of employee insurance plans such as the *Qui Tam* States have for its residents and employees.

### General Scheme By Defendant.

30. As more fully described in this Complaint and in the Disclosure Statement, Abbott engaged in an illegal marketing campaign to bolster sales of Trilipix (a drug with a continuing future of patent protection) and sacrificing sales of TriCor (a drug which is losing all patent protection within the year).

31. Abbott was aware health care professionals were, and are, resistant to switch a patient's medication if the patient is doing well on the current therapies.

32. Defendant, as more fully described below and in the Disclosure Statement, acted in an illegal manner to get as many patients to use Trilipix before Abbott fully lost its sales/profit protection of its fenofibrate drug TriCor.

33. Abbott was, and is, aware of its obligations regarding sales and marketing of prescription drugs, Abbott management and senior sales executives deliberately evaded, or with reckless ignorance, ignored, any limitations of federal or states' laws to increase its sales of Trilipix, Niaspan, and Simcor.

34. Further, Abbott, through its illegal actions, presented, or caused to be presented, false claims for payment/reimbursement by the Government and *Qui Tam* States.

35. Further, Abbott, through its illegal actions, failed to disclose, or otherwise made false statement to avoid and/or decrease an obligation to pay the Government and *Qui Tam* States.

36. Moreover, Defendant, through its illegal actions, created or otherwise fostered an unfair trade practices with regard to its prescription medication commonly known as TriCor and Trilipix.

*The Profit/Sales Victims: Consumers, States (Direct And Indirect Purchasers), And The Federal Government.*

37. Abbott has a responsibility to Plaintiffs, United States, to properly charge and have charged the federal programs and agencies, including but not limited to Medicare (including Medicare Part C and Part D), Medicaid, Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS", also known as "TRICARE") ,the Department of Veterans Affairs, which directly or indirectly pay for the drugs manufactured, marketed and sold by Abbott.

38. Abbott has a responsibility to Plaintiffs, the *Qui Tam* States, to properly charge and have charged the federal programs and agencies, including but not limited to Medicaid and the and the various States' Employee Insurance Programs, which directly or indirectly pay for the drugs manufactured, marketed and sold by Defendant.

39. Defendant knew, or should have known, that a large percentage of patients who use prescription medication for cholesterol such as TriCor and/or Trilipix have some type of health insurance which bases its formulary pricing and rebates based on volume of any given drug.

*Violations Of Law For Longer Sales And Profit Cycles.*

40.     It is a violation of the Federal Food, Drug and Cosmetic Act for a manufacturer to market or promote a drug through the dissemination of false or misleading information. Information is deemed false or misleading if it contains an unapproved

9

representation or suggestion that the drug is safer or more effective than has been demonstrated by substantial evidence or substantial clinical experience. 21 C.F.R. 202(e)(6)(i). A comparison that suggests that a drug is safer or more effective than another drug is unlawful if it has not been demonstrated to be safer or more effective by substantial evidence or substantial clinical experience. 21 C.F.R. 202(e)(6)(ii).

41.     Unsubstantiated comparative claims are prohibited by Federal Food Drug and Cosmetic Act, 21 USC § 352. The improper use of comparative claims renders a drug misbranded by the Food and Drug Administration. Once Abbott's drugs became misbranded, they were no longer eligible for reimbursement by Federal and State Programs.

42.     In violation of law, Abbott, on numerous occasions, knowingly and deliberately failed to give fair and balanced presentations on Trilipix. These false superiority claims about the drug's efficacy were made without substantial evidence to support such claims. As such, any statements about the drug's effectiveness were false, misleading, distorted, inaccurate, unfair, imbalanced, and otherwise omitted material facts Defendant was required to disclose.

43.     In violation of federal and state law and for the intended purpose receiving payments for the longer life-cycle of Trilipix and Certriad, Defendant, either directly or indirectly from the United States and the *Qui Tam* States, knowingly and deliberately sacrificed the fair market price of TriCor (resulting in higher co-pay costs and altered Medicaid Rebates) in order to generate the longer profit and sales cycle for both Trilipix and Certriad.

44.     In violation of federal law and for the intended purpose receiving payments, either directly or indirectly from the United States, and the *Qui Tam* States, Defendant knowingly and deliberately promoted Trilipix (and now Certriad), Niaspan, and Simcor illegally through the dissemination of misleading information.

**Examples Of The Fraudulent Scheme Of Defendant.**

45. Defendant violated federal and states' laws by knowingly and deliberately promoting Trilipix, Simcor, and Niaspan with its targeted literature and promotional pieces that the aforementioned drugs were safer or the equivalent to other medications.

46. For example, Abbott's drug Trilipix (a fenofibric acid) was, and is, being marketed as not requiring it to be "metabolized" in the liver, unlike TriCor and other fibrates.

47. However, Abbott knew , or with deliberate ignorance to the information, that there was and *is no clinical difference in metabolism* between Trilipix and TriCor or other fibrates.

48. Abbott provided sales representatives with materials which were not to be used in "detailing" certain drugs. Yet, Abbott encouraged, and through certain upper management, required, to engage in promotions of Trilipix which made unsupported claims of Trilipix efficacy and/or superiority to other fibrate drugs (such as the soon to be generic TriCor).

49. Futher, Abbott illegally promoted Trilipix as being "safe" with statin therapy, working hard to bury the prior claims that TriCor was "safe" with statin therapies.

50. As further noted in the Disclosure Statement, Defendant Abbott sought to destroy all sales material promoting the safety and efficacy of TriCor with statins.

51. Moreover, Defendant directed Relator and other sales representatives to recapture, or otherwise reclaim doctor's drug samples of TriCor. This action had two intended effects: 1) It reduced the amount of TriCor available to patients, therefore increasing the likelihood that the prescriber would write a prescription for Trilipix over TriCor; and 2) Removal of the samples from physicians' drug closets reduced the likelihood a prescriber would compare the efficacy of Trilipix to TriCor.

52. Abbott used the same "results" and graphs in its marketing materials and product inserts for Trilipix that it had used for TriCor. Moreover, Abbott further instructed its employees not to discuss or mention the duplication of "results".

53. Defendant also ordered Relator and other representatives to "destroy" the favorable materials regarding TriCor's efficacy with statin drugs.

***Targeting Of Prescribers To Illegally Switch Patients To Trilipix.***

54. Defendant further targeted what it deemed to be "high-enthusiastic" prescribers of its drugs. In addition, Abbott directly sought out and targeted all health care professionals who prescribed any form of fibrate medication ("gold & silver prescribers"). Abbott's goal was and is to have as many patients switched to its Trilipix brand of drug before the fenofibrate drug TriCor is available in generic doses.

55. As further described in Relator's Disclosure Statement and within this Complaint, Defendant instructed, and continues to direct, Relator and all sales representatives to have their clients, the health care professionals, ***switch patients to Trilipix***,

56. At the national launch of Trilipix, and at subsequent regional and district meetings, Defendant instructed sales representatives to target highly enthusiastic prescribers, and then all "gold & silver" professionals to ***switch their patients to Trilipix.***

12

57. Abbott unlawfully promoted the sales of Trilipix through such methods as:

- Use of unsubstantiated scientific reports and comparative studies using other medication's (TriCor) data.

- Using scientific reports that were not approved for "detailing" of a drug to promote the prescribing of the drug.

- Making false statements to health care providers and pharmacists concerning the efficacy, and safety of the drugs (Trilipix versus TriCor).

- Deliberate defiance of the FDA classification of drugs (Trilipix, TriCor) as to its therapeutic equivalency, thus avoiding price limitations based on therapeutic equivalency.

- Actively concealing its promotional scheme from the "formulary" policies of various state agencies administering Medicare and Medicaid programs which are intended to refuse payment for uses of drugs which are not medically recognized as statutorily defined.

- Reclaiming or otherwise purging samples of TriCor from physicians' sample cabinets.  Abbott further prohibited the donation, or re-distribution, of the sample TriCor to pharmacy banks who could safely distribute the medication to indigent patients, further straining financial coffers of federal and state subsidized programs.

- Paying or offering incentives and gratuities to its employees, particularly its sales force, to procure their compliance in the scheme, and to insure their silence.

13

- Rewarding and promoting managers who insure these illegal promotional tactics are utilized in their marketing promotions.
- Actively training and managing its employees in methods of concealing such illegal schematic activities so as to avoid detection by the FDA and/or other regulatory or investigatory federal or state agencies.
- Actively concealing its promotional scheme from the FDA to avoid that agency's enforcement mechanisms and to thus avoid the FDA's resultant mandatory interruption of Medicare and Medicaid payments for Trilipix prescriptions.

58. Defendant knew, or it was reasonably foreseeable, that health care professionals (doctors and nurse-practitioners) would prescribe the aforementioned drugs based on Defendant's actions.

59. As more fully described in the Disclosure Statement, Relator has reason to believe Defendant Abbott employed illegal promotions across the United States. Upon upper sales management's circulation of the "success" of the Nevada sales representatives' tactics to convince health care professionals to "switch" all patients to Trilipix, Relator and sales representatives were directed to apply similar tactics to "switch" all patients to Trilipix regardless of laws regulating such actions.

60. Defendant knew, or it was reasonably foreseeable, that patients who were switched to Trilipix, a new medication, would result in additional testing or monitoring of the patient's health because of the change in medication.

14

61. Defendant knew, or it was reasonably foreseeable, that health care providers would need to either conduct additional tests, or the patient would have additional doctor visits, to monitor the patients' tolerance to Trilipix.

62. In the alternative, Defendant was placing patients' health at risk when their health care providers did not monitor or titrate the switch of the patients' medication to Trilipix

63. Defendant knew, or it was reasonably foreseeable, that these prescriptions would be used by patients who were on federal or state programs, which programs would be responsible for reimbursement, or payment in whole, of the cost of the additional tests, patient visits, and/or medical monitoring.

64. Upon reason and belief, and as more fully described in the Disclosure Statement, Relator is aware of health care providers writing prescriptions to switch their patients to Trilipix because of the illegal acts of Defendant. Many of these patients are on federal and/or state insurance programs.

*Abbott Employs Voucher System: Illegally Circumventing Federal And States' Laws.*

65. In furtherance of its illegal promotion of its drugs, Abbott employed, and still is using, a "voucher" campaign to drive health care providers to switch patients' prescription to Trilipix, Niaspan, and Simcor.

66. When a patient utilizes the voucher, she/he presents the voucher to the pharmacist, who then charges the patient no more than a $5 co-pay charge for the medication.

67. The pharmacist in turn sends the voucher to Abbott, who pays the pharmacy its costs for processing and dispensing the medication.

68. Defendant generally pays the pharmacy/pharmacists more in "fees" for processing and dispensing than they would receive if filling a prescription through standard channels.

69. Defendant sought redemption of the $5 vouchers as the initial cost to consumer was less than the out of pocket cost the consumer would pay for TriCor or another fibrate medication.  Consumer's use of the voucher resulted in a drop of use of non-Trilipix medication, which results in a negative pricing and rebate structure for the non-Trilipix, while positioning Trilipix to a more favorable pricing structure.

## *Abbott Vouchers And Promotions Violates HIPAA And Its Employees Violate States' Laws Regarding Unauthorized Practice Of Medicine.*

70. Abbott rewarded sales representatives who were successful in having health care professionals "switch" their patients to Trilipix.

71. Abbott, was, and still is, directing its sales representatives to have health care professionals "write a letter" to their patients with a prescription for Trilipix and a voucher for $5 per refill of Trilipix. The "medical letter" was preprinted with Abbott's sales promotion of Trilipix.  The health care professional merely had to address the letter and enclose the prescription.

72. Upon reason and belief, and as more fully described in the Disclosure Statement, Relator and other sales representatives were directed to make sure these "medical letters" , with the Trilipix prescription, were sent to patients – clearly without the treating professional having any appointment or medical review to see if there was any clinical benefit for switching the medication to Trilipix.

16

73. Relator is aware of sales representatives who followed Abbott's orders, only to be faced with the realization that the sales representative was given and used personal information regarding individual patients in order to fill-in the "medical letter." Sales representatives were both violating HIPAA and violating states' laws of practicing medicine (ie prescribing Trilipix) without a license.

74. Defendant Abbott knew, or it was reasonably foreseeable, that its illegal promotions would lead to violations of federal and states' laws, yet it directed its employees to act in violation of such laws.

### *Defendant Promotes Illegal Altering Of Packaging To Push Trilipix Use And Voucher Abuse.*

75. In violation of federal and states' laws, Abbott knowingly directed and/or permitted its employees to alter packaging of products (including Trilipix, Niaspan, and Simcor) after shipment.

76. At a regional meeting in Chicago, Illinois in April 2009, Defendant demonstrated how Relator and sales representatives were to alter, or tamper, with the packaging of Abbott's drugs in order to promote its most current sales program.

77. As described more fully above, Abbott was illegally promoting the use of $5 vouchers to have patients "switch" or begin using Abbott's Trilipix, Niaspan, and Simcor.

78. Relator witnessed, and continues to observe, Abbott packaging that has been tampered, altered, or concealed in order for the "vouchers" to be placed or stapled to the product in a position of prominence.

17

79. Further, the adulterated package minimizes the product information, usage, and warnings that are part of the distribution of the prescription medication.

80. Relator has further observed the "vouchers" are deliberately separated from the disclosure that the vouchers are not available for government programs such as Medicare or Medicaid.

81. Defendant Abbott knew, or it was reasonably foreseeable, that its illegal promotions would lead to violations of federal Medicare/Medicaid statutes and regulations designed to restrict reimbursement to Federal Programs.

82. Abbott knew, or it was reasonably foreseeable, that its illegal promotions would lead to violations of state statutes and regulations designed to promote the fair competition and trade.

83. Defendant further knew, or it was reasonably foreseeable, that its illegal promotions would lead to violations of state statutes and regulations designed to restrict reimbursement to state programs such as the Employee Insurance Programs.

***Abbott Employs Additional Promotional Schemes To Push The Big Switch: Fax Pad Prescriptions; Improper "Detailing".***

84. Defendant utilized several channels to distribute the vouchers. One method Defendant employed was the use of "fax" pads for prescription of Trilipix.

85. The health care professional's office would fill in the blanks on the pre-written fax form, and then fax it to a pharmacy. The patient would be called and notified the prescription was ready to be picked up.

86. Defendant knew, or it was reasonably foreseeable, that its promotional use of fax pads would result in the patient switching to the Trilipix medication without a clinical basis for the change from other fibrate medications (such as TriCor).

87. Upon reason and belief, Relator has information that the original push was to re-supply sales representatives who had utilized at least 8% of this switch tool, Defendant estimated it needed at least this percent of redemption in order to hit Defendant's goal of switching patients to its Trilipix brand before TriCor became available in a generic form.

88. By April, 2009, Abbott had increased the minimum threshold for this switch tool to at least 17% redemption.

89. Abbott knowingly and deliberately falsely promoted the aforementioned drugs through sales detail pieces which further highlighted "end point studies" and used unsubstantiated or false claims regarding, unsubstantiated comparative and derivative studies, comparing Trilipix to TriCor (and similar tactics with Abbott's Simcor and Niaspan).

90. As noted above, it is clear Abbott supplied these materials for the purpose of having the sales representatives use them to promote the misbranding of Trilipix.

*Abbott Violates Anti-Kickback Statutes.*

91. The Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b), arose out of Congressional concern that payoffs to those who can influence healthcare decisions will result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the integrity of the

program from these difficult to detect harms, Congress enacted a per se prohibition against kickbacks.

92. The Anti-Kickback Statute prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for federally-funded medical services, including services provided under Medicare, Medicaid, and/or TRICARE/CHAMPUS programs.

93. Medicaid is a joint federal-state program that provides health care benefits for certain groups, primarily the poor and disabled. The federal involvement in Medicaid is largely limited to providing matching funds and ensuring that states comply with minimum standards in the administration of the program.

*Abbott Illegally Attempts To Influence P&T Committees Of The Qui Tam States.*

94. Medicaid allows qualified individuals to purchase prescription drugs at a low cost or at no cost to the individual, with Medicaid paying the balance of the prescription cost. Medicaid only pays for drugs that are included on the Medicaid "formulary". In several states, such as Kentucky and Tennessee, new drugs are automatically placed on the formulary for a limited period of time, generally about six (6) months, until the Pharmacy and Therapeutics Advisory Committee (P&T) reviews the drug and makes a recommendation as to whether or not to keep the new drug on the formulary. If, however, an individual begins taking a drug on the formulary, that individual is "grandfathered" in and Medicaid will continue to pay for that prescription even if a drug is removed from the formulary.

95. Upon reason and belief of sales reports, and by admission made to Relator by sales management, Abbott intentionally, or recklessly, pushed Kentucky health care

20

providers to "switch" patients to Trilipix while it was on the initial formulary for the Commonwealth.

96. Upon reason and belief of sales reports, Abbott exceeded its short term sales goal in "switching" patients to Trilipix.  As one sales manager said, "Thank God for Kentucky Medicaid."

97.  Other states, such as Ohio, wait a few months before the P&T Committee reviews or recommends the drug be placed on the state's formulary.

98. Defendant encouraged Relator and other sales representatives to get as many patients as possible switched to Trilipix before P&T reviewed, and possibly removed, Trilipix.

99. Defendant encouraged Relator and other sales representatives to tell as many health care professionals that Trilipix was "on Ohio Medicaid", when in fact was limited to Ohio Medicaid "fee for service" patients.  Fee for service made up less than 1/3 the residents who were on the Medicaid program.

100.    Relator and the other sales representatives were instructed to have the pharmacies dispense Trilipix regardless of whether it was part of the formulary.

101.    Defendant pushed patients to use Defendant's $5 voucher plan, explained in greater detail below and in the Disclosure Statement.

*Abbott Violates Anti-Kickback With Illegal Influencing Prescribers Of Defendant's Medications.*

102.    It is not permissible for Defendant to hire a speaker to build a relationship with her/him; feign access to her/him, or; reward the health care professional for past prescribing or induce future prescribing.

21

103.    As further described in the Disclosure Statement and in this Complaint, Abbott used the sales push of speaker-trained professionals and "key opinion leaders" to increase, and to monopolize, drug sales of Defendant's drugs.

104.    These key opinion leaders and speaker trained professionals were, and are, compensated to speak, or otherwise promote, the efficacy of the drugs (such as Trilipix and the combination drug Certriad).

105.    These key opinion leaders and speaker trained professionals were, and are, selected based on their willingness to prescribe Defendant's drugs (ie Trilipix instead of other fibrate drugs).

106.    Relator, upon reason and belief, is aware that Defendant paid key opinion leader, Dr. Karalis for "speaking" on Trilipix when no health care professionals attended.

107.    Relator, upon reason and belief, is aware that Defendant paid key opinion leader Dr. Michael Davidson to appear at Abbott's national launch meeting for Trilipix.

108.    At the October 2008 meeting, during a roundtable discussion, Dr. Davidson was asked if he would switch his patients to Trilipix (from TriCor). In front of over 4,000 sales and management, Dr. Davidson responded he **would not switch his patients if the patients' lipids were controlled on TriCor.**

109.    Yet, in April 2009, Dr. Davidson was one of the authors of an article chronicling the efficacy and safety of Trilipix (fenofibric acid) in combination with a statin. (The article was printed in the *journal of Clinical Lipidology*, Vol. 3, No. 2, pp 126-137 April 2009). Based on reason and belief, and based in part by Dr. Davidson's

22

financial disclosure, Dr. Davidson was and is a paid key opinion leader for Defendant Abbott. However, nowhere in the article does Dr. Davidson, or the other co-authors, disclose that they would not switch their patients to Trilipix.

110.    Defendant Abbott directed Relator, and other sales representatives, to detail, or promote Dr. Davidson's article to the target health care professionals – but not to disclose that the very author found no compelling clinical reason to switch his own patients to Trilipix.

111.    Relator, upon reason and belief, and as more fully described in Relator's Disclosure Statement, is aware of health professionals who affirmatively became "speaker-trained" on Trilipx in order to receive remuneration from Abbott.

112.    The aforementioned professionals affirmed to Relator that she/he/they would switch and/or write prescriptions for Trilipix in order to be paid speakers for Defendant.

113.    Defendant Abbott, and these key opinion leaders and speaker trained professionals, knew, that their prescriptions of the drugs (Trilipix) would be used by patients who were on federal or state programs, which would be responsible for reimbursement, or payment in whole, of the cost of the prescribed drug (Trilipix).

*Abbott Violates Anti-Kickback With Illegal Influencing Prescribers: Preceptorships.*

114.    In addition to key opinion leaders and speaker trained professionals, Abbott also uses unlawful remuneration through "preceptorships" to increase the number of prescriptions written of its drugs, including Trilipix.

23

115.    "Preceptorships" are ostensibly an education opportunity for Abbott's employees to learn about the health care practice.  Abbott treated "preceptorships" as a sales opportunity for Trilipix.

116.    In violation of federal and state laws, and PhRMA (Pharmaceutical Research and Manufactures of America) guidelines, Abbott directed its employees to sell or market to the healthcare professional during the "preceptorship".

117.    Here, Abbott knew, or it was reasonably foreseeable, that health care professionals participated in the "preceptorships" because the health care professional was paid for what was, and is, a sales pitch to push the sales of Trilipx.

118.    Defendant knew, or it was reasonably foreseeable, that that following a "preceptorship" session, the health care professional would increase the number of written prescriptions of the drugs (Trilipix).

119.    At a meeting in November, 2008, Abbott's Regional Manager Jerry Friedman told Relator, as well as other Abbott employees, that they only focus at a preceptorship should be to sell Trilipix.  Friedman said, "make no mistake about it, your job is to sell your products."

120.    Upon reason and belief, and more fully described in Relator's Disclosure Statement, Relator is aware of health care professionals who "switched" patients to Trilipix after being paid to be part of a "preceptorship".

121.    In addition to the health care professional receiving a soft kick-back "payment" for the "preceptorship", Defendant knew, or it was reasonably foreseeable, that health

care professionals would increase their remuneration for having to conduct additional office visits and/or lab tests, for each patient who was "switched" to Trilipix.

122.    Defendant knew, or it was reasonably foreseeable, that these prescriptions would be used by patients who were on federal or state programs, which programs would be responsible for reimbursement, or payment in whole, of the cost of the prescribed drug.

123.    Defendant's goal was, and is, to replace TriCor's sales ($1.4 billion) with Trilipix and Certriad sales.

124.    Defendant's illegal actions impacted more than a pricing/co-pay structure by pharmacy benefit managers.  On a quarterly basis, government programs such as Medicare/Medicaid receive a rebate from pharmaceutical manufacturers on outpatient drugs dispensed in the respective states to Medicaid/Medicare beneficiaries. (Commonly known as a "Medicaid Rebate")

125.    Defendant Abbott's failure to include price concessions (in this case providing the drugs for $5) *thereby results in an underpayment of the "Medicaid Rebate" to the states.*

126.    Typically, each state requiring the submission of a cost report also requires an authorized agent of the provider to expressly certify that the information and data on the cost report is true and correct.

127.    Where a provider submits the cost report with false or incorrect data or information to Medicaid, this causes the submission of false or incorrect data or

25

information to the state Medicaid program, and the false certification on the cost report necessarily causes a false certification to Medicaid as well.

128.    Where a provider submits a Medicaid cost report containing the same false or incorrect information from the Medicare cost report, false statements and false claims for reimbursement are made to Medicaid.

129.    As described above, it is illegal for Defendant to have Medicare/Medicaid patients use the vouchers to obtain the prescription.

130.    As described more fully in the Disclosure Statement, Relator has information that Defendant Abbott, in defiance of federal and state regulations, illegally promoted the use of the $5 vouchers to every Medicaid/Medicare patient, urging the patient, the health care professional, and even the pharmacy, to process the vouchers as a cash transaction, without reporting the same to the "Medicaid Rebate" program.

131.    Abbott knew, or it was reasonably foreseeable, that Defendant's actions would, and did, result in underpayment of "Medicaid Rebates" to the states.

132.    Defendant's misrepresentations were material to the decision of the Government to pay for the services.

133.    Switching is nationwide – example of Nevada and circulation of the news across the US with Regional management directing Relator and sales representatives to use the same techniques.

*Retaliatory And Anticompetitive Behavior By Defendant.*

134.    Relator and, upon reason and belief, other employees complained to Defendant about the illegal promotional activities.

135. Upon reason and belief, and as more fully described in the Disclosure Statement, those individuals whom Abbott could easily identify as having complained were retaliated against.

136. Upon reason and belief, and as a result of complaints and/or whistle-blowing activities, Abbott has discharged, demoted, suspended, threatened, harassed or otherwise discriminated against those who have lawfully raised attention to Abbott's illegal, and potentially harmful actions.

## V. CAUSES OF ACTION

### COUNT ONE

### FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(1)
### (Presentation of False Claims)

137. The allegations of the preceding paragraphs are realleged as if fully set forth.

138. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendant knowingly presented or cause to be presented to officers or employees of the United States Government and the government of the *Qui Tam* States false or fraudulent claims for payment or approval in violation of 31 U.S.C. §3729(a)(1).

139. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information which supported claims to CMS, and Federal Programs, with actual knowledge of the falsity of the information that supported these claims, cause, and may still be causing, the use of false or fraudulent materials or information to support claims paid by the government.

140. The United States of America, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid and may still be paying or reimbursing Defendant for patients enrolled in Federal and/or State programs.

141. As a direct result of Defendant's actions as set forth in the Complaint, the United States of America, and the *Qui Tam* States, have been, and may continue to be, severely damaged.

### COUNT TWO

### FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(2)
### (Making or Using False Record or Statement to Cause Claim to be Paid)

142. The allegations of the preceding paragraphs are realleged as if fully set forth.

143. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements, to get false or fraudulent claims paid or approved by the Government and the *Qui Tam* States in violation of 31 U.S.C. §3729(a)(2).

144. As a direct result of Defendant's actions as set forth in the Complaint, the United States of America, and the *Qui Tam* States, have been, and may continue to be, severely damaged.

### COUNT THREE
### FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(3)

145. The allegations of the preceding paragraphs are realleged as if fully set forth.

146. By virtue of the acts described above, Defendant knowingly and willfully conspired to defraud the United States by getting the United States to pay, either

28

directly or indirectly, a claim for the purchase of Defendant's drugs, including, but not limited to Trilipix.

147.    Plaintiff, United States, unaware of the promotional scheme adopted and implemented by Defendant, and in reliance on the accuracy and regulatory compliance of Defendant, the marketing of its drugs including Trilipix, paid the false and fraudulent claims presented for the purchase of Trilipix, which constitutes numerous violations of 31 U.S.C. §3729(a)(3).

148.    By reasons of these payments, the United States has been damaged in substantial amounts.

### COUNT FOUR
### FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(7)
### (Making or Using False Record or Statement to Avoid an Obligation to Refund)

149.    The allegations of the preceding paragraphs are realleged as if fully set forth.

150.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements, to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States of America and the *Qui Tam* States in violation of 31 U.S.C. §3729(a)(2).

151.    As a direct result of Defendant's actions as set forth in the Complaint, the United States of America, and the *Qui Tam* States, have been, and may continue to be, severely damaged.

### COUNT FIVE
### False Statements to Health Care Professionals

152.    The allegations of the preceding paragraphs are realleged as if fully set forth.

153.    Defendant has instructed and caused its sales personnel and its medical

employees to make false statements to physicians, and to provide physicians with

written materials containing false statements concerning the safety and efficacy of

Trilipix.  These statements were made with the intent of, and had the effect of,

inducing physicians to increase the prescribing of Trilipix. This increased prescribing

of Trilipix  has caused and continues to cause harm to the federal government by

increasing the number of Medicare claims for Trilipix prescriptions.

154.    The false statements made by Defendant include representations that scientific

evidence exists that Trilipix is a more effective remedy for certain conditions.  At the

time these false statements were made, they were unsupported by any legitimate

scientific evidence.

155.    Defendant's false statements made to health care professionals were a pattern of

fraud designed to induce payments by the federal government, and constituted

additional False Claims within the meaning of 31 U.S.C. §3729.

**COUNT SIX**
**(Public Policy Tort)**

156.    The allegations of the preceding paragraphs are realleged as if fully set forth.

157.    At all times pertinent hereto, Defendant derived substantial revenue from business

in the *Qui Tam* States, including Ohio.

158.    At all times pertinent hereto, Relator was acting in his scope and capacity of

employment with Defendant.

159.    It is the public policy of the states that illegal conduct, including theft by

deception and fraud and fraud against Medicaid, Medicare, and/or the public health

care systems and publicly-funded health programs and insurance, shall not be tolerated.

160.  It is further the public policy of the States that witnesses to criminal activity shall not be intimidated or coerced, such that the public policy of theft through fraud may be furthered by law enforcement and judicial systems.

161.  It is further public policy that no one shall obstruct justice, nor obstruct official business.

162.  It is further the public policy that there is a duty to report quality of health, care, and/or safety problems.

163.  Relator reasonably believed that Defendant defrauded Medicare, Medicaid, and private insurers when it illegally billed for payment of its drug Trilipix.

164.  Relator repeatedly protested these actions to Defendant's management, and officers, but received little or no response.

165.  The harassment and intimidation by Defendant's management continued, causing the constructive termination of several employees in addition to Defendant placing Relator on a "performance improvement" plan.

166.  Defendant's actions violated the State's public policy as set forth above.

167.  Harassment, and adverse employment actions, taken against one opposing such activities jeopardize the public policies identified above and elsewhere in this Complaint.

168.  As a direct and proximate result of the retaliation against him and others for opposing the unlawful conduct, Relator has suffered extreme emotional and mental

anguish, including lost income and benefits, and will suffer further such injuries and losses in the future.

169.    As a direct and proximate result of Defendant's illegal actions, Relator has suffered permanent loss of earning capacity.

## COUNT SEVEN

### Unauthorized Practice Of Medicine

170.    The allegations of the preceding paragraphs are realleged as if fully set forth.

171.    Defendant has a duty, under the States' Statutes to avoid, and/or prevent, the unauthorized practice of medicine.

172.    Defendant, by its actions as described herein, promoted and illegally marketed Defendant's drugs, including Trilipix, to be more safe and efficacious compared to other fibrate medication.

173.    By illegally promoting and marketing its drugs, including Trilipix, Defendant was promoting the unauthorized practice of medicine.

174.    Defendant and its employees have a duty under the State Statutes to report suspected, known, or observed violations of licensees, and non-licensed individuals.

175.    Defendant failed to prevent and or report the unauthorized practice of medicine.

176.    Relator, the citizens of the States, were damaged by Defendant's breach of duty, for which Relator should be compensated.

## COUNT EIGHT

### Arkansas Medicaid Fraud False Claims Act, ARK. CODE ANN. 20-77-901, et seq.

177.    The allegations of the preceding paragraphs are realleged as if fully set forth.

178.    This is a civil action brought by Relator, in the name of the State of Arkansas, against Defendant pursuant to the State of Arkansas Medicaid Fraud False Claims Act, ARK. CODE ANN. 20-77-901, et seq.

179.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made or caused to be made, a false statement or misrepresentation of material fact on an application for benefit or payment under the Arkansas Medicaid program, in violation of state laws.

180.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made or caused to be made, a false statement or misrepresentation of material fact for use in determining rights to a benefit or payment in violation of state laws.

181.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally concealed or failed to disclose an event with an intent to fraudulently secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of state statute.

182.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly offered or paid remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for or recommending purchasing or ordering of a good, supply, or service for which payment is made, in violation of state statute.

183.    The State of Arkansas or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims or statements, paid for prescription drugs and prescription related management services for recipients of Medicaid.

184.    As a result of Defendant's actions, the State of Arkansas or its political subdivisions has been and continue to be severely damaged.

**COUNT NINE**

**Arkansas Deceptive Trade Practices Act, Ark. Code Ann §4-88-101, et seq;**

**Arkansas Unfair Practices Act, Ark. Code. Ann. §4-75-301, et seq.**

185.    The allegations of the preceding paragraphs are realleged as if fully set forth.

186.    Defendant's acts violate state law, and Plaintiff/Relator is entitled to relief on behalf of consumers and state government entities under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, et seq.

187.    Defendant's acts violate state law, and Plaintiff/Relator is entitled to relief on behalf of consumers and state government entities under the Arkansas Unfair Practices Act, Ark. Code. Ann. §4-75-301, et seq.

**COUNT TEN**

**California False Claims Act, CAL GOV'T CODE 12650 et seq.**

188.    The allegations of the preceding paragraphs are realleged as if fully set forth.

189.    This is a civil action brought by Relator, in the name of the State of California, against Defendant pursuant to the California False Claims Act, CAL CODE 12652(c).

190.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made

34

or caused to be made, a false records or statements to get false or fraudulent claims paid in violation of state law.

191.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, presented or caused to be presented to an officer or employee of the State of California or its political subdivisions false or fraudulent claims for payment in violation of state laws.

192.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made or caused to be made, a false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of California or its political subdivisions in violation of state law.

193.     The State of California or its political subdivisions, unaware of the falsity of the claims or statements made by Defendant, and in reliance on the accuracy of these claims, paid for prescription drugs and prescription drug related management services for recipients of state and state subdivision funded health insurance programs.

194.     As a result of Defendant's actions, the State of California, or its political subdivisions, has been and continue to be severely damaged.

## COUNT ELEVEN

## California Cartwright Act, Cal. Bus. & Prof. Code §16700 et seq.; California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 et seq.

195.     The allegations of the preceding paragraphs are realleged as if fully set forth.

196.     This is a civil action brought by Relator, in the name of the State of California, against Defendant pursuant to the Cartwright Act, Cal. Bus. & Prof. Code §16700 et

seq. and the California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 et seq.

197.    The aforementioned practices by Defendant were, and are, in violation state laws. As a result of Defendant's anticompetitive acts and unfair and deceptive practices, residents of the State of California and its state government have suffered and been injured in business and property and will continue to suffer ascertainable loss and damages.

198.    Accordingly, Plaintiff/Relator, seeks all relief available under state law including damages, restitution, disgorgement, unjust enrichment, injunctions, treble damages, costs, attorney fees, and/or civil penalties, and any other such relief available under statute or equity.

## COUNT TWELVE

### Connecticut Antitrust Act Conn. Gen. Stat. 35-24 et seq.;

### Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a et seq.

199.    The allegations of the preceding paragraphs are realleged as if fully set forth.

200.    This is a civil action brought by Relator, in the name of the State of Connecticut.

201.    Defendant's acts violate, and Plaintiff/Relator is entitled to relief under Connecticut Antitrust Act, Conn. Gen. Stat. 35-24 et seq., and Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a et seq.

## COUNT THIRTEEN

### Delaware False Claims Act, DEL. CODE tit 6, 1201 et seq.

202.    The allegations of the preceding paragraphs are realleged as if fully set forth.

203.    This is a civil action brought by Relator, in the name of the State of Delaware against Defendant pursuant to the Delaware False Claims Act, DEL. CODE tit 6, 1201 et seq.

204.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, presented or caused to be presented to an officer or employee of the State of Delaware false or fraudulent claims for payment in violation of state laws.

205.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made or caused to be made, a false records or statements to et false or fraudulent claims paid in violation of state law.

206.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made or caused to be made, a false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Delaware in violation of state law.

207.    The Government of the State of Delaware, unaware of the falsity of the claims or statements made by Defendant, and in reliance on the accuracy of these claims, paid for prescription drugs and prescription drug related management services for recipients of state and state subdivision funded health insurance programs funded by the State.

208.    As a result of Defendant's actions, the State of Delaware has been severely damaged.

## COUNT FOURTEEN

### Violation Of The District Of Columbia False Claims Act, D.C. CODE ANN § 2-308.13, *et seq.*

209.    Plaintiffs/Relator incorporate herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

210.    This is a civil action brought by Plaintiffs/Relator, in the name of the District of Columbia against Defendant under the District of Columbia False Claims Act, D.C CODE ANN. § 2·308. 15(b).

211.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented. or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the District, a false or fraudulent claim for payment or approval, in violation of D.C. CODE ANN, § 2·308.14(a)(1).

212.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly used or caused to be used, and may continue to use or cause to be used, false records and/or statements to get false claims paid or approved by the District, in violation of D.C. CODE ANN, § 2·308.14(a)(2).

213.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or used, or caused to be made or used, and may still be making or using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the District, in violation of D.C. CODE ANN § 2·308.14(a)(7).

214.    The District of Columbia, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements. paid, and may continue to pay for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the District.

215.    As a result of Defendant's actions, as set forth above, the District of Columbia has been, and continues to be, severely damaged.

### COUNT FIFTEEN

### Violation Of The District Of Columbia Antitrust Act, D.C. CODE ANN § 28-4502, *et seq.*

216.    The allegations of the preceding paragraphs are realleged as if fully set forth.

217.    This is a civil action brought by Relator, in the name of the District of Columbia.

218.    Defendant's acts violated provisions of the District of Columbia Antitrust Act, D.C. Code § 28-4502, et seq. These acts restrained, or continue to restrain, competition in Defendant's sale of Trilipix and Certriad in the District of Columbia.

219.    The District of Columbia, along with its residents, have been injured by Defendant's actions as described above.

220.    Plaintiff/Relator is entitled to monetary relief for injuries directly or indirectly suffered by the District of Columbia and its residents.

### COUNT SIXTEEN

### Violation Of The State Of Florida False Claims Act, FLA. STAT. 68-081, *et seq.*

221.    Plaintiffs/Relators incorporate herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

222.    This is a civil action brought by Relator on behalf of the State of Florida against Defendant under the State of Florida's False Claims Act, FLA. STAT. ANN. § 68.083(2).

223.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to officers or employees of the State of Florida or one of its agencies false or fraudulent claims for payment or approval, in violation of FLA. STAT. ANN § 68.082(2(a).

224.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082(2(b).

225.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making or using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Florida, or one of its agencies, in violation of FLA. STAT. ANN. § 68.082(2(g).

226.    The State of Florida and its agencies, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance plans funded by the State of Florida or its agencies.

227.    As a result of Defendant's actions, as set forth above, the State of Florida and/or its agencies have been, and may continue to be, severely damaged.

40

## COUNT SEVENTEEN

### Violation Of Florida's Deceptive And Unfair Trade Practices Act, §501.207 et seq

228.    The allegations of the preceding paragraphs are realleged as if fully set forth.

229.    This is a civil action brought by Relator, in the name of the state of Florida.

230.    Defendant's acts violate, and Plaintiff/Relator is entitled to relief under Florida's Deceptive and Unfair Trade Practices Act §501.207 et seq.

## COUNT EIGHTEEN

### Violation Of The State Of Hawaii
### False Claims Act False Claims To The State, HAWS REV. STAT. § 661-21, *et seq.*

231.    The allegations of the preceding paragraphs are realleged as if fully set forth.

232.    This is a civil action brought by Relator on behalf of the State of Hawaii and its political subdivisions against Defendant under the State of Hawaii's False Claims Act – False claims to the state, HAW. REV. STAT. § 661-25.

233.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to officers or employees of the State of Hawaii, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of HAW. REV. STAT. § 661-21(a)(1).

234.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made

or used, false records or statements to get false or fraudulent claims paid or approved by the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(2).

235.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making or using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(7).

236.    The State of Hawaii, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

237.    As a result of Defendant's actions, as set forth above, the State of Hawaii and/or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT NINETEEN

### VIOLATION OF THE STATE OF INDIANA
### FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT, IND. CODE § 5-11-5.5, *et seq.*

238.    The allegations of the preceding paragraphs are realleged as if fully set forth.

239.    This is a civil action brought by Relator on behalf of the State of Indiana against Defendant under the State of Indiana False Claims and Whistleblower Protection Act, IND. CODE ANN. § 5-11-5.5-4(a).

240.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

42

or intentionally presented, or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of IND. CODE. ANN § 5-11-5.5-2(b)(1).

241.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to obtain payment or approval of false claims by the State of Indiana, in violation of IND. CODE ANN. §5-11-5.5-2(b)(2).

242.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid an obligation to pay or transmit money to the State of Indiana, in violation of IND. CODE. ANN § 5-11-5.5-2(b)(6).

243.    The State of Indiana, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

244.    As a result of Defendant's actions, as set forth above, the State of Indiana has been, and may continue to be, severely damaged.

## COUNT TWENTY

### Violation Of The State Of Illinois
### Whistleblower Reward And Protection Act, 740 ILL. COMP. STAT. ANN. 175/1, *et seq.*

245.    The allegations of the preceding paragraphs are realleged as if fully set forth.

43

246.    This is a civil action brought by Relator on behalf of the State of Illinois against Defendant under the State of Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. ANN. 175/4(b).

247.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Illinois or a member of the Illinois National Guard a false or fraudulent claim for payment or approval, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(1).

248.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(2).

249.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(7).

250.    The State of Illinois, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may

continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

251.    As a result of Defendant's actions, as set forth above, the State of Illinois has been, and may continue to be, severely damaged.

## COUNT TWENTY-ONE

### Violation Of Iowa Consumer Fraud Act, Iowa Code section 714.16 et seq., and Iowa Competition Act Iowa Code section 553 et seq.

252.    The allegations of the preceding paragraphs are realleged as if fully set forth.

253.    This is a civil action brought by Relator, in the name of the state of Iowa.

254.    Defendant has violated Iowa law including the Iowa Consumer Fraud Act, Iowa Code section 714.16 et seq., and Iowa Competition Act Iowa Code section 553 et seq.

255.    Iowa, along with its residents, have been injured by Defendant's actions as described above.

256.    Plaintiff/Relator is entitled to monetary relief for injuries directly or indirectly suffered by the Plaintiff/Relator, and or its residents.

## COUNT TWENTY-TWO

### Violation of Kansas Restraint of Trade Act, Kan. Stat. Ann. §50-101 et seq.

257.    The allegations of the preceding paragraphs are realleged as if fully set forth.

258.    This is a civil action brought by Relator, in the name of the state of  Kansas.

259.    Defendant's acts violate Kansas' laws, and Plaintiff/Relator is entitled to relief under Kansas Restraint of Trade Act, Kan. Stat. Ann. §50-101 et seq.

45

## COUNT TWENTY-THREE

### Violation Of The State Of Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:437.1, *et seq.*

260.    The allegations of the preceding paragraphs are realleged as if fully set forth.

261.    This is a civil action brought by Relator, on behalf of the State of Louisiana's medical assistance programs against Defendant under the State of Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:439.1.

262.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims, in violation of LA. REV. STAT. § 46:438.3(A).

263.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly engaged in misrepresentation, and may still be engaging in misrepresentation, to obtain, or attempt to obtain, payment from medical assistance programs funds, in violation of LA. REV. STAT. § 46:438.3(B).

264.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly submitted, and may continue to submit, claims for goods, services or supplies which were medically unnecessary or which were of substandard quality or quantity, in violation of LA. REV. STAT. § 46:438.3(D).

265.    The State of Louisiana, its medical assistance programs, political subdivisions and/or the Department, unaware of the falsity of the claims and/or statements made by Defendant, or their actions as set forth above, acted in reliance, and may continue to act in

46

reliance, on the accuracy of Defendant's claims and/or statements in paying for prescription drugs and prescription drug-related management services for medical assistance program recipients.

266.    As a result of Defendant's actions, the State of Louisiana, its medical assistance programs, political subdivisions and/or the Department have been, and may continue to be, severely damaged.

## COUNT TWENTY-FOUR

### Violation Of Maine Monopolies And Profiteering Law, 10 MRSA §1101 et seq.

267.    The allegations of the preceding paragraphs are realleged as if fully set forth.

268.    This is a civil action brought by Relator, in the name of the state of Maine.

269.    Defendant's acts violate the Maine Monopolies and Profiteering Law,  10 MRSA §1101 et seq.

270.    Plaintiff/Relator is entitled to relief under state laws.

## COUNT TWENTY-FIVE

### Violation Of The State Of Massachusetts False Claims Act, MASS LAWS ANN. Ch. 12, § 5A, *et seq.*

271.    The allegations of the preceding paragraphs are realleged as if fully set forth.

272.    This is a civil action brought by Relator on behalf of the Commonwealth of Massachusetts against Defendant under the Massachusetts False Claims Act, MASS. LAWS ANN. Ch. 12, § 5C(2).

273.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of MASS. LAWS ANN. Ch. 12, § 5B(1).

47

274. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to obtain payment or approval of claims by the Commonwealth of Massachusetts or its political subdivisions, in violation of MASS. LAWS ANN. Ch. 12, § 5B(2).

275. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Massachusetts or one of its political subdivisions, in violation of MASS. LAWS ANN. Ch. 12, § 5B(8).

276. The Commonwealth of Massachusetts, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

277. As a result of Defendant's actions, as set forth above, the Commonwealth of Massachusetts or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT TWENTY-SIX

### Violation Of The State Of Michigan Medicaid False Claims Act, MICH. COMP. LAWS SERV. § 400.601, *et seq.*

278. The allegations of the preceding paragraphs are realleged as if fully set forth.

279.    This is a civil action brought by Plaintiff/Relator, in the name of the State of Michigan against Defendant under the State of Michigan Medicaid False Claims Act, MICH. COMP. LAWS SERV. § 400.610 et seq.

280.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, false statement or false representation of a material fact in an application for Medicaid benefits, in violation of state laws.

281.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly concealed or failed to disclose an event affecting its initial or continued right to receive Medicaid benefit or the initial or continued right of any other person whose behalf Defendant has applied for or is receiving a benefit with intent to obtain a benefit to which Defendant is not entitled or in an amount greater than that to which Defendant is entitled in violation of state law.

282.    Defendant, in possession of facts under which it is aware or should be aware of the nature of its conduct and that its conduct is substantially certain to cause the payment of Medicaid benefit, knowingly presented or made or caused to be presented or made, and may still be presenting or causing to be presented a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as as amended, in violation of MICH. COMP. LAWS SERV. § 400.607(1).

283.    The State of Michigan, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims

49

and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

284.    As a result of Defendant's actions, as set forth above, the State of Michigan or its political subdivisions have been, and may continue to be, severely damaged.

### COUNT TWENTY-SEVEN

### Violation of Minnesota Unlawful Trade Practices Act, Minn. Stat. §325D.09 et seq.

285.    The allegations of the preceding paragraphs are realleged as if fully set forth.

286.    This is a civil action brought by Relator, in the name of the state of Minnesota.

287.    Defendant's acts violate Minnesota's Unlawful Trade Practices Act.

288.    Plaintiff/Relator is entitled to relief under such state laws.

### COUNT TWENTY-EIGHT

### Violation Of The State Of Montana False Claims Act, MONT. CODE ANN. § 17-8-401, *et seq.*

289.    The allegations of the preceding paragraphs are realleged as if fully set forth.

290.    This is a civil action brought by Relator on behalf of the State of Montana against Defendant under the State of Montana False Claims Act, MONT. CODE ANN. § 17-8-406(1).

291.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of MONT. CODE ANN. § 17-8-403(1)(a).

292.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made

or used, false records or statements to get a false claim paid or approved, in violation of MONT. CODE ANN. § 17-8-403(1)(b).

293.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Montana or one of its political subdivisions, in violation of MONT. CODE ANN. § 17-8-403(1)(g).

294.     The State of Montana, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

295.     As a result of Defendant's actions, as set forth above, the State of Montana or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT TWENTY-NINE

### Violation Of The State Of New Hampshire Medicaid False Claims Act, N.H. REV. STAT. ANN. § 167:61-b, *et seq.*

296.     The allegations of the preceding paragraphs are realleged as if fully set forth.

297.     This is a civil action brought by Relator, in the name of the State of New Hampshire against Defendant under the State of New Hampshire Medicaid False Claims Act, N.H. REV. STAT. ANN. § 167:61-cII.(a).

298.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

presented, or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(a).

299. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false claim paid or approved, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(b).

300. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Hampshire or one of its political subdivisions, in violation of presented a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as as amended, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(e).

301. The State of New Hampshire, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

302. As a result of Defendant's actions, as set forth above, the State of New Hampshire or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT THIRTY

### Violation Of The State Of New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-1, *et seq.*

303.    The allegations of the preceding paragraphs are realleged as if fully set forth.

304.    This is a civil action brought by Relator, in the name of the State of New Mexico against Defendant under the State of New Mexico Medicaid False Claims Act, N.M.. STAT. ANN. § 27-14-7(B).

305.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, a false or fraudulent claim for payment under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4A.

306.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may be continuing to present or causing to be presented a claim for payment under the Medicaid program that is not authorized or is not eligible for benefit under the Medicaid program, in violation of N.M.. STAT. ANN. § 27-14-4B.

307.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false or fraudulent claim paid or approved, in violation of N.M.. STAT. ANN. § 27-14-4C.

308.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

53

made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Mexico or one of its political subdivisions, in violation of N.M.. STAT. ANN. § 27-14-4E.

309.     The State of New Mexico, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

310.     As a result of Defendant's actions, as set forth above, the State of New Mexico or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT THIRTY-ONE

### Violation Of The State Of New York False Claims Act, N.Y. CLS. ST. FIN. § 187, *et seq.*

311.     The allegations of the preceding paragraphs are realleged as if fully set forth.

312.     This is a civil action brought by Relator on behalf of the State of New York against Defendant under the State of New York False Claims Act, N.Y. CLS St. Fin. § 190.2.

313.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.Y. CLS St. Fin. § 189(a).

314.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made

54

or used, false records or statements to get a false claim paid or approved, in violation of N.Y. CLS St. Fin. § 189(b).

315.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New York or one of its political subdivisions, in violation of N.Y. CLS St. Fin. § 189(g).

316.     The State of New York, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

317.     As a result of Defendant's actions, as set forth above, the State of New York or its political subdivisions have been, and may continue to be, severely damaged.

### COUNT THIRTY-TWO

### Violation Of The State Of Nevada Submission Of False Claims To State Or Local Government Act, NEV. REV. STAT. ANN. § 357.010, *et seq.*

318.     The allegations of the preceding paragraphs are realleged as if fully set forth.

319.     This is a civil action brought by Relator on behalf of the State of Nevada against Defendant under the State of Nevada Submission of False Claims to State or Local Government Act, NEV. REV. STAT. ANN. § 357.080(1).

320. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of NEV. REV. STAT. ANN. § 357.040(1)(a).

321. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to obtain payment or approval for false claims, in violation of NEV. REV. STAT. ANN. § 357.040(1)(b).

322. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Nevada or one of its political subdivisions, in violation of NEV. REV. STAT. ANN. § 357.040(1)(g).

323. The State of Nevada, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

324. As a result of Defendant's actions, as set forth above, the State of Nevada or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT THIRTY-THREE

### Violation Of The State Of Tennessee False Claims Act, TENN. CODE ANN. §§ 4-18-101, *et seq.*

325.    The allegations of the preceding paragraphs are realleged as if fully set forth.

326.    This is a civil action brought by Relator on behalf of the State of Tennessee against Defendant under the Tennessee False Claims Act, TENN. CODE ANN § 4-18-104(c).

327.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Tennessee, or its political subdivisions, false claims for payment or approval, in violation of TENN. CODE ANN § 4-18-103(a)(1).

328.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to get a false claim paid or approved by the state or its political subdivisions, in violation of TENN. CODE ANN § 4-18-103(a)(2).

329.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay money to the State of Tennessee or its political subdivisions, in violation of TENN. CODE ANN § 4-18-103(a)(7).

330.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

57

made, used or caused to be made or used, and may still be making, using or causing to be made or used, any false or fraudulent conduct, representation, or practice in order to procure anything of value directly or indirectly from the state or its political subdivisions, in violation of TENN. CODE ANN § 4-18-103(a)(9).

331.    The State of Tennessee, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

332.    As a result of Defendant's conduct, as set forth above, the State of Tennessee or its political subdivisions has been, and may continue to be, severely damaged.

### COUNT THIRTY-FOUR

### Violation Of The State Of Tennessee Medicaid False Claims Act, TENN. CODE. ANN. § 71-5-181, *et seq.*

333.    The allegations of the preceding paragraphs are realleged as if fully set forth.

334.    This is a civil action brought by Relator, in the name of the State of Tennessee against Defendant under the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-183(a).

335.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, to the State of Tennessee a claim for payment under the Medicaid program knowing it was false or fraudulent, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(A).

336.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used or caused to be made or used, and may still be making, using or causing to be made or used, records or statements to get false or fraudulent claims under the Medicaid program paid for or approved by the State of Tennessee with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(B).

337.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Tennessee, relative to the Medicaid program, with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(D).

338.    The State of Tennessee, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of the Medicaid program.

339.    As a result of Defendant's actions, as set forth above, the State of Tennessee has been, and may continue to be, severely damaged.

## COUNT THIRTY-FIVE

### Violation Of The State Of Texas Human Resources Code, TEX. HUM. RES. CODE § 36.001, *et seq.*

340.    The allegations of the preceding paragraphs are realleged as if fully set forth.

341.    This is a civil action brought by Relator, in the name of the State of Texas against Defendant under the State of Texas Human Resources Code, Medicaid Fraud Prevention Chapter, TEX. HUM. RES. CODE § 36-101(a).

59

342. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, A false statement or misrepresentation of material fact on an application for a contract, benefit or payment under a Medicaid program, in violation of TEX. HUM. RES. CODE § 36-002(1).

343. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact that is intended to be used, and has been used, to determine a person's eligibility for a benefit or payment under the Medicaid program, in violation of TEX. HUM. RES. CODE § 36-002(2).

344. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, caused to be made, induced or sought to induce, and may still be making, causing to be made, inducing or seeking to induce, the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid program in violation of TEX. HUM. RES. CODE § 36-002(4)(B).

345. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made a claim under the Medicaid program for a service or product that was inappropriate, in violation of TEX. HUM. RES. CODE § 36-002(7)(C).

60

346.    The State of Texas, its political subdivisions or the Department, unaware of the

falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of

these claims and/or statements, paid, and may continue to pay, for prescription drugs and

prescription drug-related management services for recipients of Medicaid.

347.    As a result of Defendant's actions, as set forth above, the State of Texas, its

political subdivisions or the Department has been, and may continue to be, severely damaged.

### COUNT THIRTY-SIX

#### Violation Of The Commonwealth Of Virginia
#### Fraud Against Taxpayers Act, VA CODE ANN. § 8.01-216, *et seq.*

348.    The allegations of the preceding paragraphs are realleged as if fully set forth.

349.    This is a civil action brought by Relator on behalf of the Commonwealth of

Virginia against Defendant under the Commonwealth of Virginia Fraud Against Taxpayers Act,

VA CODE ANN § 8.01-216.5, *et seq.*

350.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

presented or caused to be presented, and may still be presenting or causing to be presented, to an

officer or employee of the Commonwealth, a false or fraudulent claim for payment or approval,

in violation of VA. CODE ANN. § 8.01-216.3(A)(1).

351.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, and may still be making, using, or causing to be made

or used, false records or statements to get false or fraudulent claims paid or approved by the

Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

352.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(7).

353.     The Commonwealth of Virginia, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

354.     As a result of Defendant's conduct, as set forth above, the Commonwealth of Virginia, its political subdivisions or the Department has been, and may continue to be, severely damaged.

**WHEREFORE**, Relator respectfully requests that this Court enter judgment against Defendant  Abbott as follows:

(1)     That the Defendant cease and desist from violating 31 U.S.C. §3729 et seq.

(2)     That Defendant be ordered to cease and desist from further violating Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, et seq. and Arkansas Unfair Practices Act, Ark. Coe. Ann. §4-75-301, et seq. Arkansas Medicaid Fraud False Claims Act, §20-77-901 et seq.; the California Cartwright Act, Cal. Bus. & Prof. Code §16700 et seq. and Unfair Competition Act, Cal. Bus. & Prof. Code  § 17200 et seq., California False Claims Act.  Cal. Code  § 12650 et seq.; the Connecticut Antitrust Act, Conn. Gen. Stat. 35-24 et seq., and Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a et seq.; the Delaware False Claims and Reporting Act De. Code Ann. Tit. 6, §1201 et seq.; the District of Columbia Antitrust Act, D.C. Code  §

28-4502, District of Columbia False Claims Act. D.C. Code § 2-308.13 et seq.; Florida's

Deceptive and Unfair Trade Practices Act §501.207 et seq., Florida False Claims Act, Fla. Stat.

68-081 et seq.; the Hawaii False Claims Act – False Claims to the State Haw. Rev. Stat. § 661-

21 et seq.; the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1 et

seq.; the Indiana False Claims and Whistleblower protection Act Ind. Code §5-11-5.5 et seq.;

the Iowa Consumer Fraud Act, Iowa Code section 714.16 et seq., and Iowa Competition Act

Iowa Code section 553 et seq.; the Kansas Restraint of Trade Act, Kan. Stat. Ann. §50-101 et

seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. § 46:437.1 et seq.;

the Maine Monopolies and Profiteering Law, 10 MRSA §1101 et seq.; the Massachusetts False

Claims Act, Mass Laws Ch. 12, §5A et seq.; the Michigan Medicaid False Claims Act, Mich

Comp Laws serv. §400.601 et seq.; the Minnesota Unlawful Trade Practices Act Minn. Stat.

§325D.09 et seq.; the Montana False Claims Act, Mont. Code §17-8-401 et seq.; the New

Hampshire Medicaid False Claims Act, N.H. Rev. Stat. § 167:61-b et seq.; the New Mexico

Medicaid False Claims Act., N.M. Stat § 27-14-1 et seq.; the New York False Claims Act, N.Y.

CLS St. Fin. § 187 et seq.; the Nevada False Claims to State or Local Government Act, Nev.

Rev. Stat. § 357.010 et seq.; the Ohio Medicaid Fraud, ORC § 5111.03 et seq.; the Tennessee

False claim act 4-18-103(a)(1) et seq., Tennessee Medicaid False Claims Act, 71-5-181 et seq.;

the Texas Medicaid Fraud Prevention, Tex. Hum. Res. Code §36.001 et seq.; and the Virginia

Fraud Against Taxpayers Act, Va. Code § 8.01-216.1 et seq.

     (3)    That this Court enter judgment against Defendant in an amount equal to three

times the amount of damages the United States Government has sustained because of the

Defendant's actions, plus a civil penalty of not less than $5,000.00 and not more than $11,000.00

for each violation of 31 U.S.C. §3729;

(4)     That Plaintiffs be awarded the maximum amount allowed pursuant to the federal and state laws.

(5)     That Defendant Abbott be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

(6)     That Relator be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act and of the various *Qui Tam* States' provisions;

(7)     That Relator be awarded all compensatory and punitive damages with respect to statutory and tort claims in an amount being just;

(8)     That Judgment be granted to Plaintiffs against Defendant for all costs of this action, including court costs, expert fees and all attorney's fees costs incurred by Plaintiffs in the prosecution of this suit; and

(9)     That Relator recover such other relief as the Court deems just and proper.

Respectfully submitted,

B. DAHLENBURG BONAR, P.S.C.

BARBARA D. BONAR (43797)
THERESA M. MOHAN (0072307)
3611 Decoursey Avenue
Covington, Kentucky 41015
(859) 431-3333
**Attorneys for Plaintiff/Relator**

## REQUEST FOR TRIAL BY JURY

Relator hereby requests a trial by jury of all issues so triable.

Theresa M. Mohan (0072307)

## *VERIFICATION*

Robert A. Liter, having been first duly cautioned and sworn, states that he has read the

foregoing Complaint, and the facts contained therein are true and correct to the best of his

knowledge.


_____
ROBERT A.LITER


**STATE OF KENTUCKY**
**COUNTY OF KENTON**


Subscribed and sworn to by Robert A. Liter, before me, a Notary Public, on this the 8th day

of August, 2009.


_____
NOTARY PUBLIC, STATE AT LARGE


My Commission Expires:

Oct. 16, 2011